NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THERESA MARIE GATTO, | Case No. 3:19-CV-12408(BRM) |
| Plaintiff, | |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | OPINION |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Theresa Marie Gatto's ("Gatto") appeal from the final decision of the Commissioner of Social Security ("Commissioner"),[1] denying her application for Social Security Disability Benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Court **AFFIRMS** the decision of the ALJ.

I. **BACKGROUND**

A. **Procedural History**

Gatto filed an application for supplemental security income on April 3, 2015, alleging a disability that began February 28, 2015. (ALJ Hearing Decision, Tr. 25.) This claim was denied on June 6, 2015. (Notice of Disapproved Claim, Tr. 110-14.) Gatto filed a timely request for

---

[1] Upon the Appeals Council's Order denying Gatto's request for a review of the decision of Administrative Law Judge Nicholas Cerulli ("ALJ"), the ALJ's decision became the final decision of the Commissioner.

reconsideration on June 15, 2015. (Notice of Request for Reconsideration, Tr. 115.) Upon reconsideration, the claim was again denied on August 11, 2015. (Notice of Reconsideration, Tr. 116-21.) On August 27, 2015, Gatto timely filed a written request for a hearing. (Request for Hearing, Tr. 122-23.) That hearing was held on November 3, 2017, in Pennsauken, New Jersey before the Hon. Nicholas Cerulli. (Hrg. Tr., Tr. 43-81.) Gatto testified at that hearing. (*Id.*) Also testifying was Louis P. Szollosy, an impartial vocational expert. (*Id.*) On February 28, 2018, Administrative Law Judge Cerulli issued a decision concluding that Gatto "has not been under a disability within the meaning of the Social Security Act from February 28, 2015 through the date of this decision." (Tr. 25.) As such, Gatto was not entitled to disability insurance or SSDI benefits.

On June 13, 2018, Gatto timely filed a Request for Review of the ALJ's decision to the Appeals Council. (Advocator Group Letter, Tr. 14-16.) On March 15, 2019, the Appeals Council denied Gatto's Request for Review, thereby becoming the final agency decision. (Notice of Appeals Council Action, Tr. 1-6.) Having exhausted her administrative remedies, Gatto filed an appeal to this Court on May 10, 2019. (Compl. (ECF No. 1).) This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### B. Factual Background

Gatto was 54 years old on the date of her application, qualifying her as a "person closely approaching advanced age" pursuant to the Commissioner's regulations. (Tr. 51; *see also* 20 C.F.R. § 416.963).) Gatto has a GED and prior work experience as a school nurse, pediatric nurse/nurse practitioner, and nurse supervisor. (Tr. 75-76.) She has not engaged in substantial gainful activity since filing her application for supplemental security income. (*Id.* 27.) She lives

with her husband. (Tr. 51-52.) She testified that she cannot lift a laundry basket and that her husband helped with much of the household activities. (Tr. 61.)

Gatto "has the following severe impairments: degenerative disc disease, osteoarthritis, irritable bowel syndrome, systemic lupus erythematosus, headaches and asthma." (Tr. 27.)

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III.     THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. §§ 423(d)(1)(A), 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching,

4

carrying, or handling." 20 C.F.R. § 404.1522(b)(1). A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see also Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *See* 20 C.F.R. § 404.1526(b)(3). An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *see also Bowen*, 482 U.S. at 141. Step four involves three sub-steps: (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether

claimant has the level of capability needed to perform the past relevant work. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146-47 n.5). The Commissioner bears the proof burden for step five. *See id.* at 263.

6

### IV.     DECISION

Gatto raises two issues on appeal. First, she argues that, in denying her disability and benefits, the ALJ failed to properly weigh the medical opinion of her treating physician, Carrie Edelman, M.D. ("Edelman"), when determining Gatto's RFC, and, second, the ALJ erred by failing to properly evaluate Gatto's testimony. (Pl.'s Br. in Support of Appeal (ECF No. 10) at 15). Specifically, Gatto contends the ALJ failed to give Edelman's medical findings the deference required by the Regulations and case law. (*Id.*) Similarly, Gatto maintains "the ALJ erred in assessing her credibility, and therefore her RFC," because the objective medical evidence "is consistent with Gatto's reported symptomatology." (*Id.* at 31.)

The Commissioner counters that the Regulations require a treating physician's opinions to have controlling weight only when that opinion "is both (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the record." (Def.'s Br. in Op. of Appeal (ECF No. 11) at 11.) However, the Commissioner maintains, Edelman's own treatment notes do not support the diagnosis of Gatto's extreme functional limitations, because, for example, during three visits during the relevant period Gatto rated her pain on a 10-point scale consistent with mild pain. (Def.'s Br. in Op. of Appeal (ECF No. 11) at 4.)[2] The Commissioner further contends the medical records of other physicians do not support the "extreme limitations in sitting, standing, walking, lifting, carrying, and using hands as opined by Dr. Edelman." (*Id.* at 12 (citing Tr. 34).) The Commissioner maintains the ALJ therefore appropriately "afforded Dr. Edelman's opinions less weight." (*Id.* at 11 (citing Tr. 34).) Accordingly, "the law is clear . . . that the opinion of a

---

[2] During a 4-15-2015 visit with Edelman, Gatto rated her pain as 1-3 on a 10-point scale. (Tr. 369.) At a May 2016 visit with Edelman, Gatto rated her pain as 0-4 on a 10-point scale. (Tr. 463.) During her final visit with Edelman, Gatto rated her pain as 1-2 on a 10-point scale. (Tr. 465.)

7

treating physician does not bind the ALJ on the issue of functional capacity." (*Id.* (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.3 (3d Cir. 2011)).)

As a general rule, the Regulations require an ALJ to afford great, even controlling, weight to opinions from a treating medical expert. *See* 20 C.F.R. § 404.1527(c). Controlling weight historically meant "the claimant's treating physician's diagnoses and findings regarding the degree of claimant's impairment are binding on the ALJ unless there is substantial evidence to the contrary." *Arzuaga v. Bowen*, 833 F.2d 424, 426 (2d Cir. 1987).

While it is well-settled that treating physicians are in a unique position to assess the claimant's limitations, in the Third Circuit "the opinion of a treating physician does not bind the ALJ." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Rather, pursuant to 20 C.F.R. § 404.1527(c)(2), a treating source's opinion will be given controlling weight only if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." When controlling weight is not warranted, several factors are used to determine the weight given to the medical opinion including: the length of the treatment relationship; the nature and extent of the treatment relationship; supportability by the medical evidence; and consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ's finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Buckley v. Astrue*, No. 09-5058, 2010 WL 3035746 *9 (D.N.J. Aug. 3, 2010) (quoting *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981)).

Regarding Gatto's RFC, the ALJ found:

> "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can perform occasional climbing of ramps and stairs, but no climbing of ropes, ladders, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and frequent

8

> reaching, handling, fingering, and feeling. She can tolerate frequent exposure to extreme cold and heat, wetness and humidity, dust, fumes, odors, and pulmonary irritants, and vibration; but can have no exposure to hazards such as unprotected heights and moving machinery.

(Tr. 29.) The ALJ stated this conclusion was based on having "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*)

> Edelman concluded Gatto "was debilitated by overwhelming fatigue," and
>
>> "could lift 10 pounds occasionally and carry 5 pounds occasionally; could occasionally grasp and reach, but never/rarely perform fine manipulation; would frequently experience interference of attention and concentration; would need to take unscheduled breaks during an 8-hour workday; and would be absent from work more than 3 times per month."

(ECF No. 10 at 4 (citing Tr. 431-435).)

The ALJ accorded "little weight" to Edelman's opinion, though Edelman was Gatto's treating rheumatologist, because the ALJ concluded Edelman's "opinions are inconsistent with the overall record including normal objective findings found in contemporaneous treatment notes throughout the medical evidence of record. (Tr. 34.) Specifically, the ALJ reviewed the treatment notes from Gatto's more than 15 visits and/or examinations by medical professionals including internists, gastroenterologists, pulmonologists, orthopedists and physical therapists. (Tr. 31-33.) In reviewing these notes, the ALJ observed that Gatto's reports of ailments or symptoms often were not supported by findings from physical exams. Consider Gatto's reports of symptoms including fatigue, weakness, Raynaud's Disease, abdominal pain and insomnia at an April 14, 2015 visit with Edelman. (Tr. 31.) The ALJ observed, based on Edelman's treatment notes, that despite these complaints "[o]n examination, the claimant was alert, fully oriented and in no acute

9

distress. She had intact sensation and no abdominal tenderness or masses. She had normal skin and normal breath sounds." (*Id.*)

Similarly, the ALJ noted how, at a December 24, 2015 pulmonology follow-up visit, Gatto reported "shortness of breath at times and a mild cough and wheeze," though on "examination the claimant had mostly clear lungs with a mild wheeze and cough" and a recent chest x-ray "showed no acute infiltrates, congestion or pleural effusion." (Tr. 32.)

In short, the ALJ concluded that "apart from Dr. Edelman's opinions, the record does not document extreme fatigue or objective findings to support such extreme limitations in the claimant's ability to sit, stand, walk, lift, carry or use her hands. The claimant specifically denied fatigue in September 2016, March 2017 and June 2017." (Tr. 34 (citing Ex. 34F at 37 and 111; 36F at 1).)

Gatto contends the ALJ erred in giving little weight to Edelman's opinions because an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." (ECF No. 10 at 13 (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted).)

In *Morales*, the Third Circuit overturned the ALJ's rejection of a treating physician's opinions based on the Court's conclusion the ALJ improperly relied on his own judgment of the claimant's alleged condition rather than the medical opinions. *Morales*, 225 F.3d at 315. As such, *Morales* is inapposite to the present matter, where the ALJ specifically stated Edelman's opinion was accorded little weight because it was "inconsistent" with the overall medical record. (Tr. 34.) According to the Regulations, only those medical opinions "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" are given the controlling weight advocated by Gatto. *See* 20 CFR § 404.1527(c).

Gatto argues that even if Edelman's opinions were not given controlling weight, the Regulations still require a "special deference" from the ALJ for Edelman's medical opinions. (ECF No. 10 at 15 (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188).) Gatto argues SSR 96-2p requires Edelman's opinion to be accorded the greatest weight even if it does not meet the test for controlling weight.

The Commissioner counters that SSR 96-2p is inapplicable as it was rescinded for all pending claims as of March 27, 2017. (ECF No. 11 at 14 (citing 82 FR 16869-02 (Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p; Correction) (noting that the listed SSRs were rescinded effective March 27, 2017)).) The Court disagrees. The Regulations state, "For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520(c) apply." As Gatto's claim was filed in February 2015, it is clear "the rules in § 404.1520(c) apply."

However, it also is clear Gatto misreads SSR 96-2p, which states: "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It *may* still be entitled to deference and be adopted by the adjudicator." <u>Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions</u>, SSR 96-2P (S.S.A. July 2, 1996) (emphasis added). It is clear from this that any ALJ deference to a treating physician's opinions is merely permitted, not required.

Gatto argues the ALJ's failure to explicitly list the § 404.1527(c) factors for gauging when to give such deference "strongly suggests [the ALJ] did not apply the proper legal standard in evaluating the treating source opinion." (ECF No. 10 at 16.) The Commissioner counters that a

11

rote discussion addressing those § 404.1527(c) factors is not error because the Third Circuit recently found no error where an ALJ "'did not specifically identify each factor' when giving a treating physician's opinion little weight because the decision showed the factors were considered." (ECF No. 11 at 15 (quoting *Sutherland v. Comm'r Soc. Sec.*, No. 17-3381, 2019 WL 4733048, at *4 (3d Cir. Sept. 27, 2019)).)

When controlling weight isn't warranted, several factors are used to determine the weight given to the medical opinion including: the length of the treatment relationship; the nature and extent of the treatment relationship; supportability by the medical evidence; and consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(2)-(6).

It is clear from the ALJ's Decision the ALJ considered each of these factors. First, the ALJ expressly identified Edelman as Gatto's treating rheumatologist and recognized that this relationship extended at least to April 2015, shortly after the alleged onset date. (Tr. 34.) The ALJ also explicitly reviewed the treatment notes from Edelman's April 14, 2015 examination of Gatto. (Tr. 34) The Commissioner maintains the record contains only three examinations by Edelman after Gatto's alleged onset date of February 2015, with none after September 2016. (ECF No. 11 at 10 (citing Tr. 369-70, 463-65).) The ALJ further reviewed the basis of Edelman's July 2015 assessment of Gatto's ability to work, as well as Edelman's opinions contained in a November 2016 impairment questionnaire.

It is clear also the ALJ adhered to Regulations providing that adjudicators "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." *See* § 404.1527(c)(5). Edelman determined Gatto was disabled as a result of, among other things, "overwhelming fatigue," "involvement of her lungs with pleurisy," and "gastrointestinal disease

12

involvement," as well as Raynaud's Disease. (Tr. 603.) The ALJ observed that Gatto's gastroenterologist found after a July 7, 2015 examination that claimant had "soft, positive bowel sounds," and a nontender abdomen. (Tr. 31, 589.) The ALJ further observed that an August 11, 2015 examination by her pulmonologist concludes with the assessment that Gatto had asthma and a likely reactive airway, while her "lungs were clear to auscultation," and tests "showed no obstructive lung defect." (Tr. 31, 868-69.) The Court further observes Gatto's pulmonary specialist found Gatto denied shortness of breath, wheezing, cough, hoarseness and chest wall pain at a June 2017 examination, and assessed her has having asthma and upper airway cough syndrome. (Tr. 31, 568-69.)

As discussed, the ALJ also reviewed at length two other § 404.1527(c) prongs: the extent to which he determined Edelman's medical opinions were not supported by the medical evidence and were not consistent with the record as a whole. (Tr. 30-34; *see also* 20 C.F.R. § 404.1527(c)(2)-(6).)

Gatto argues the ALJ failed to consider the opinion of Peter P. Barcas, D.O. ("Barcas"), a neurologist who in July 2015 opined that Gatto was unable to work. (ECF No. 10 (citing Tr. 555.) Gatto maintains this constitutes error because the Regulations require that "opinions from any medical source on issues reserved to the Commissioner must never be ignored." (*Id.* at 24 (quoting SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996)); *see also Thomas v. Astrue*, No. 10-6205, 2012 WL 1067690, at *6 (D.N.J. March 29, 2012).)

The Commissioner counters by citing *Pintal v Comm'r of Soc. Sec.*, where the Third Circuit stated, "an ALJ is not required to cite every piece of evidence in the record." (ECF No. 11 at 14 (quoting *Pintal*, 602 F. App'x 84, 88 (3d Cir. 2015)).) The Commissioner further argues that the Barcas opinion Gatto cites, that Gatto was "unable to work at this time," is not a medical

13

opinion, in that it is not a judgment about the nature and severity of Gatto's impairments, and as such not an opinion the ALJ was required to weigh. (*Id.* at 16 (quoting 20 CFR §§ 404.1527(a)(1) and (d)).) The Court agrees. However, the Court observes that while the ALJ does not expressly review Barcas's July 2015 opinion, the ALJ extensively reviews Barcas's conclusions related to a February 2015 examination, as well as Barcas's conclusions related to a March 2016 examination. In the former, the ALJ compared claimant's reports of severe burning dysesthesias and pain in her feet, among other symptoms, with an examination in which Barcas observed that Gatto had a steady gait, was able to tandem walk with mild difficulty, and appeared stable on her present regime. (Tr. 30-31.) Of the latter, the ALJ again compared Gatto's reports of symptoms to observations after examination that Gatto's headaches had improved, she had "painless range of motion of the lumbar spin, hips and knees," "full strength in the bilateral lower extremities," with a slow but steady gait. (Tr. 32.)

In the Third Circuit, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians great weight." *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317). However, an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Here, the ALJ accorded little weight to the medical opinion of Gatto's treating rheumatologist and the ALJ supported this conclusion with substantial evidence plucked from the medical record. This Court declines to re-weigh that evidence. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (holding, on appeal, a district court cannot re-weight the evidence but must affirm if the Commissioner's decision is supported by substantial evidence).

Accordingly, the Court turns to Gatto's second issue on appeal, that the ALJ erred by failing to properly evaluate Gatto's testimony about her pain and limitations in step four's determination of Gatto's RFC. (ECF No. 10 at 15). Gatto's arguments again fail to persuade.

Gatto testified that she stopped working because of overwhelming fatigue, even when working on a part-time basis, as well as burning sensations in her hands and feet. (ECF No. 10 at 11 (citing Tr. 55, 60).) Gatto also testified she could stand only 30 minutes at a time and could lift and carry only five pounds. (*Id.* (citing Tr. 62).) She also testified she had difficulties with shortness of breach, wheezing, and coughing due to her asthma, as well as short-term memory problems. (*Id.* (citing Tr. 64, 65-69.) Gatto argues all of these symptoms, as well as other complaints, were amply supported by the medical record.

The Commissioner counters that the ALJ appropriately adhered to a two-step process for considering Gatto's statements. (ECF No. 11 at 17 (citing 20 CFR § 404.1529(a).) The Commissioner contends the ALJ first determined Gatto suffered from medically determinable impairments that could reasonably be expected to produce the symptoms detailed in Gatto's testimony. (*Id.* (citing § 404.1529; SSR 16-3p).) The Commissioner maintains the ALJ then appropriately evaluated the intensity and persistence of Gatto's symptoms, compared with the objective medical evidence, as required by the second step of § 404.1529. (*Id.*) The Commissioner concludes, "[t]he ALJ addressed Plaintiff's complaints, pointed to evidence of record that contradicted the degree of limitation Plaintiff alleged, and specifically accommodated these complaints in the RFC." (*Id.* at 19.) The Court agrees.

The Regulations require an ALJ to give significant consideration to a claimant's subjective testimony of the inability to perform even light or sedentary work, but only when that testimony is supported by competent medical evidence. An ALJ may discount a claimant's

15

subjective complaints if they are inconsistent with the evidence of record. 20 CFR § 404.1529(a); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Therefore, an ALJ will consider a claimant's statements about the intensity, persistence, and limiting effects of symptoms, but will evaluate those statements "in relation to the objective medical evidence and other evidence," in reaching a conclusion as to whether a claimant is disabled. 20 CFR § 404.1529(c)(4).

Here, the ALJ determined that while Gatto's "medically determinable impairments could reasonably be expected to cause" the symptoms testified to by Gatto, her "statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 30.)

Gatto argues *Thomas v. Colvin* is on point as the claimant there, like Gatto, complained of chronic fatigue related to illness. Gatto maintains the *Thomas* court "decided that reasonably supported evidence of fatigue in an MS patient could not be rejected without contrary medical evidence." (ECF No. 10 at 26 (citing *Thomas*, No. 13-5791, 2015 WL 500161, at *4 (E.D. Pa. Feb. 4, 2015)) (quoting *Claussen v. Chater*, 950 F. Supp. 1287, 1297 (D.N.J. 1996)).) In *Claussen*, the court determined that since most of the claimant's medical notes reflected complaints of fatigue, contrary medical evidence was lacking. *Claussen*, 950 F. Supp. at 1297. Gatto urges the same conclusion here.

The Commissioner counters that the ALJ "addressed Plaintiff's complaints, pointed to evidence of record that contradicted the degree of limitation Plaintiff alleges, and specifically accommodated those complaints in the RFC." (ECF No. 11 at 19.) The Commissioner concludes that a "reasonable mind reviewing this evidence could make the same finding as the ALJ—that

Plaintiffs failed to prove that she experienced disabling symptoms," referring to the burden of proof carried by Gatto in this appeal. (*Id.*). The Court agrees.

A review of the ALJ's decision demonstrates, for example, that the ALJ chronicled a lengthy roster of Gatto's symptoms as gleaned from her testimony. (*See* Tr. 30.) Chief among these symptoms is "extreme fatigue" that prevented her from walking for any significant time, from focusing, and from driving longer than thirty or forty minutes. (Tr. 30.) Yet, the ALJ notes at least three medical examinations in which Gatto either denied feeling fatigue or, after reporting symptoms of fatigue, was evaluated by a medical professional as being alert and fully oriented, including two examinations in 2017. (Tr. 30-33 (citing Tr. 368-370,783-785, 872-874).)

Gatto bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). At step four, Gatto must prove whether she retains the RFC to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *see also Bowen*, 482 U.S. at 141. The ALJ determined "the record does not document extreme fatigue" as claimed by Gatto, observing that Gatto "specifically denied fatigue in September 2016, March 2017 and June 2017." (Tr. 34.) In short, in considering Gatto's subjective symptoms for the RFC determination, the ALJ's conclusion that Gatto failed to carry her burden of showing that her fatigue, among other symptoms, would prevent her from working was supported by substantial evidence. It is clear the ALJ considered all evidence before him, weighed the credibility of the evidence, and appropriately indicated his weighting of the evidence while explaining in detail his reasoning for that weighting. *See Plummer*, 186 F.3d at 429; *Cotter*, 642 F.2d at 705. As such, the ALJ's determination of Gatto's RFC was supported by substantial evidence, and his decision is therefore **AFFIRMED.**

## V. CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the decision of the ALJ and the matter is closed.

**Date:** September 30, 2020                                  */s/ Brian R. Martinotti*
                                                                               **HON. BRIAN R. MARTINOTTI**
                                                                               **UNITED STATES DISTRICT JUDGE**